Marian F. Harrison
US Bankruptcy Judge

Dated: 08/12/10



# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WENSONS PROPERTY ) | CASE NO. 310-03644 |
| MANAGEMENT, d/b/a WENSON'S ) | |
| PROPERTY MANAGEMENT, ) | CHAPTER 11 |
| ) | |
| Debtor. ) | |
| ) | JUDGE MARIAN F. HARRISON |
| ) | |

_____

## MEMORANDUM OPINION
_____

This matter is before the Court upon Reliant Bank's motion for relief from the automatic stay. The Court finds that the motion should be granted. The following represents the Court's findings of fact and conclusions of law, pursuant to Fed. R. Civ. P. 52(a)(1) as incorporated by Fed. R. Bankr. P. 7052.

## I. BACKGROUND

The debtor has been in business since 2002. It owns a commercial shopping center located on Cason Lane in Murfreesboro, Tennessee (hereinafter "Murfreesboro Property") and a commercial building located on South Bennett Street in Southern Pines, North Carolina

(hereinafter "North Carolina Property"). The debtor purchased the Murfreesboro Property in May 2008 for $3,500,000, with a down payment of $1,400,000. The balance was funded through a loan from Reliant Bank in the principal amount of $2,185,000, as evidenced by a Multipurpose Note and Security Agreement, as amended (hereinafter the "Note"). The debtor's obligations under the Note were secured by a Deed of Trust (hereinafter the "Deed") and an Assignment of Rents and Leases (hereinafter the "Assignment"), both dated May 6, 2008, encumbering the Murfreesboro Property. The Assignment is an absolute and unconditional assignment and not an assignment for additional security.

In August 2009, at the debtor's request, Reliant Bank agreed to suspend monthly payments of principal and interest to monthly payments of interest only for a period of six months. Despite this accommodation, Reliant Bank did not receive any payment from the debtor for several months immediately preceding the filing of the bankruptcy petition on April 2, 2010. The petition was filed on the eve of the foreclosure sale scheduled by Reliant Bank. According to Reliant Bank's proof of claim, filed on June 14, 2010, the accrued interest on the loan as of the petition date is $23,144.01 with a principal balance of $2,176,083.66.[1] As of the petition date, there were $8211.81 in late fees and $2519.19 in attorney fees. The total amount of the claim as of the petition date was $2,210,646.36, and

---

[1] This amount includes $19,589, which represents the 2008 property taxes on the Murfreesboro Property that Reliant Bank paid to protect its lien priority and to avoid the accrual of penalties and interest.

the loan to the debtor accrues interest at the rate of $373.25 per day, or approximately $11,570 in a 31-day month.

At an earlier hearing on Reliant Bank's motion for relief, the debtor delivered a check for $28,759 to Reliant Bank in payment of the 2009 property taxes on the Murfreesboro Property, plus penalties and interest. Eduard Wenas, a principal of the debtor, testified that his mother, Jeanne Wenas, advanced these funds to the debtor. The debtor has not reserved any funds for the payment of 2010 property taxes, and the monthly amount required to amortize the payment of the 2010 property taxes on the Murfreesboro Property over 12 months is approximately $2200 per month.

Prior to June 1, 2010, the Murfreesboro Property was managed by Brookside Properties, Inc. (hereinafter "Brookside"). Pursuant to the Agreed Order Regarding Payment of Post-Petition Expenses and Disposition of Rents entered on April 23, 2010, Brookside was authorized to continue to manage the Murfreesboro Property, collect all rents generated from the Murfreesboro Property, pay ordinary monthly operating expenses, and remit the balance of the rents to Reliant Bank. According to Brookside, the debtor's share of operating expenses for the Murfreesboro Property through May 31, 2010, was $2450 per month. If all current tenants timely paid their stated rent, the monthly rents on the Murfreesboro Property would total approximately $13,900, yielding a monthly net operating income of approximately $11,450. According to Brookside's records, two current tenants, Children's

Shoe Company, LLC (hereinafter "CSC") and Kirkenburt's Smokehouse Grill, owe substantial amounts of unpaid rent. Specifically, CSC is in arrears in rent in the amount of approximately $21,000. Moreover, CSC's lease has expired but it continues to occupy the leased premises without having signed a new lease. The debtor has proposed forgiving CSC's $21,000 in back rent and signing a new lease with CSC secured by the personal guarantees of its owner. Kirkenburt's Smokehouse Grill is in arrears on rent payments in the amount of approximately $4700.

On May 31, 2010, the debtor removed Brookside as property manager. Post-petition, Reliant Bank received two checks from Brookside in the total amount of $26,184.31 as payments of rents from the Murfreesboro Property. These payments were applied to the outstanding principal balance of the loan. After removing Brookside, the debtor replaced it with The Jones Company.[2] The Jones Company has remitted no post-petition rents from the Murfreesboro Property to Reliant Bank, nor has it provided Reliant Bank with a budget of monthly operating expenses since taking over management of the Murfreesboro Property.[3]

---

[2] The debtor has yet to submit an order substituting The Jones Company for Brookside, and directing The Jones Company to comply with the terms of the Agreed Order regarding collection and disbursement of post-petition rents. In fact, based on the debtor's failure to submit such an order led Reliant Bank to file a motion to compel which was heard on August 10, 2010.

[3] At the August 10, 2010, hearing, Mr. Hall testified that The Jones Company was terminated as property manager and that he had agreed to act as property manager on a temporary basis.

4 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:10-bk-03644   Doc 39   Filed 08/13/10   Entered 08/13/10 11:49:46   Desc Main Document      Page 4 of 14

The Jones Company signed a lease for space in the Murfreesboro Property, effective June 1, 2010, after receiving three months free rent and a deposit waiver as concessions from the debtor. Until The Jones Company signed its lease agreement, there had been five vacant spaces at the Murfreesboro Property since some time in 2009. There has been no change in occupancy in the Murfreesboro Property following June 1, 2010, when the lease to The Jones Company became effective.

Steven Hall, the realtor who sold the Murfreesboro Property to the debtor, testified that there is a vacant space next to CSC in the Murfreesboro Property which is substantially complete but will require construction of a restroom at a cost to the debtor of $5000. The Jones Company has located a dress shop as a prospective tenant for the Murfreesboro Property which has said it will not require a tenant improvement build-out.[4] The Jones Company has offered the dress shop three months free rent as an inducement to lease space in the Murfreesboro Property. No lease has been executed. The Jones Company has also extended a proposal to a taco company as a prospective tenant for the Murfreesboro Property. This lease will require a tenant improvement build-out in the amount of approximately $20,000. Mr. Hall proposes to lend the debtor $20,000 to pay for these tenant improvements at an annual interest rate of 15%. The debtor proposes to recoup the $20,000

---

[4]At the August 10, 2010, hearing, Mr. Hall testified that this potential tenant had not worked out. Mr. Hall further testified that the debtor was currently in negotiations with a pizza place interested in leasing space at the Murfreesboro Property, but no agreement has been reached.

expended to construct the tenant improvements through additional rent paid by the taco company. The Jones Company has offered the taco company four months free rent as an inducement to sign a five-year lease. No lease has been executed.

The only income listed on the debtor's monthly operating report for April 2010 is income from the North Carolina Property, in which Reliant Bank has no interest. The positive cash flow from the North Carolina Property was approximately $500 for April 2010. The rental income on the North Carolina Property was approximately $10,480 per month with monthly expenses of approximately $3000, for an approximate monthly net operating income of $7480. However, the debtor recently granted one tenant a rent concession in the amount of $1000 per month, so the monthly rental income is now only $9480.

Mr. Wenas advanced $5500 to the debtor in payment of a refinancing fee to Global Group, an entity which was to assist the debtor in refinancing its debt on the North Carolina Property. The refinancing has not occurred, and the debtor has demanded repayment of the refinancing fee. The debtor scheduled this $5500 advance as an account payable to Mr. Wenas on Exhibit D to its May 2010 monthly operating report.

Mr. Wenas and Mr. Hall advanced funds to the debtor to pay the debtor's legal fees for the bankruptcy filing. Mr. Wenas took a "personal withdrawal" from the debtor-in-possession account in April 2010 in the amount of $3500, and Mr. Hall received a wire

6 - U.S. Bankruptcy Court, M.D. Tenn.

transfer from the debtor-in-possession account in April 2010 in the amount of $3750 in repayment of these advances. Mr. Wenas testified that he repaid $3,500 to the debtor-in-possession account on June 15, 2010. Mr. Hall testified that he has not repaid the $3750 wire transfer but has agreed to do so. Mr. Wenas advanced $11,218.76 to the debtor in May 2010 to pay the 2008 property taxes for the North Carolina Property. In May 2010, the debtor transferred $820 to James E. McNeill, a North Carolina attorney who assists the debtor with landlord/tenant and collection issues, without seeking the Court's approval.

The debtor's monthly operating report for April 2010 reflects unpaid expenses incurred by the bankruptcy estate of $11,620. The debtor's monthly operating report for May 2010 indicates unpaid expenses incurred by the bankruptcy estate increased to $28,638.65.

Kitti Yindiphol, president of the debtor, testified that the North Carolina Property is on the market for $1,900,000 but that the debtor could accept a sale in the amount of $1,500,000 to $1,600,000. Mr. Yindiphol testified that the debtor has not received any offers to purchase the North Carolina Property. The North Carolina Property is subject to two mortgages, a first mortgage held by Mr. Yindiphol in the approximate amount of $160,000 and a second mortgage held by Mr. Wenas' mother, Jeanne Wenas, in the approximate amount of $760,000. Mr. Yindiphol testified that the debtor plans to retain any net sale proceeds from the sale of the North Carolina Property to apply toward its obligations to

7 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:10-bk-03644    Doc 39    Filed 08/13/10    Entered 08/13/10 11:49:46    Desc Main
Document    Page 7 of 14

Reliant Bank. He further testified that he and Ms. Wenas would forego adequate protection payments during the exclusivity period and will not object to the debtor utilizing rental income from the North Carolina Property for the purpose of making up the shortfall in income from the Murfreesboro Property.[5]

In January 2010, Reliant Bank ordered an appraisal of the Murfreesboro Property by R.K. Barnes & Associates. The Murfreesboro Property appraised at a stabilized value of $2,500,000 and an "as-is" value of $2,350,000. The appraiser found that to achieve stabilized value, the debtor would need to increase its rented occupancy percentage from the then-current 59% to 90%. Neither party called someone from R.K. Barnes & Associates to testify.

In June 2010, Reliant Bank ordered a second appraisal of the Murfreesboro Property by David Smedley. Mr. Smedley appraised the Murfreesboro Property at a stabilized value of $2,580,000 and an "as-is" value of $2,160,000.[6] In reaching an "as-is" value, Mr. Smedley took the stabilized value and subtracted the costs necessary to stabilize the Murfreesboro Property and the discount necessary to sell the Murfreesboro Property within 12 months.

---

[5]At the August 10, 2010, hearing, the proof showed that the debtor had taken no steps toward providing the offered adequate protection payments.

[6]In his report, Mr. Smedley rounded all dollar amounts, and it is these rounded amounts that the Court references in this Memorandum Opinion.

In looking at the costs of stabilizing or leasing up the Murfreesboro Property, Mr. Smedley testified that approximately 6152 square feet is vacant, with some of the vacant space having never been built out with any kind of tenant improvements. Mr. Smedley opined that the debtor would need to lease at least 4500 square feet of the vacant space. In order to lease out this percentage of the vacant space, Mr. Smedley estimated that necessary improvements required by prospective tenants would cost approximately $67,500 ($15 per square foot x 4500 unoccupied square feet). Other necessary costs to stabilize the Murfreesboro Property would include lease commissions and marketing expenses ($10,000) and income loss during the 12 month lease-up period ($42,000). The total estimated stabilization costs would be $119,500.

In addition to stabilization costs, Mr. Smedley applied a present value discount "necessary to reflect the sale of the building to a single purchaser within the typical marketing period (which is considered to be a minimum of 12 months)." Mr. Smedley testified that since January 2010, market conditions for commercial real estate have declined, vacancy rates have increased, average rents have decreased by approximately $2 per square foot, and investors are requiring higher yields. Mr. Smedley opined that an institutional investor is not likely to purchase the Murfreesboro Property within the next 12 months because institutional investors currently have little desire to invest in unanchored real estate developments.

To determine the appropriate discount rate, Mr. Smedley analyzed the data by applying the "Build-up Method," which "provides a yield on the subject real estate by providing a reasonable premium for the risk, illiquidity and limited marketability of the [Property]," and the "Weighted Average Cost of Capital Technique," which analyses all of the risk and return parameters of investment in the Property. Based on these methods, Mr. Smedley concluded that a discount rate of 11% should be employed. He then applied the discounted rate of 11% to the estimated time it would take to hold or market the property (present value of $1 with 11.00% yield over 1.167 years = 0.8846988) and multiplied the stabilized value ($2,580,000) by the discount factor (0.8846988) to reach a lump sum discount of $300,000. Under Mr. Smedley's analysis, this discount reflects the reduction necessary to sell the Murfreesboro Property in a 12-month period.

In summary, Mr. Smedley took the stabilized value ($2,580,000) and subtracted the costs of stabilizing ($119,500) and the discount required to sell the property in a 12-month period ($300,000) to reach an "as-is" value of $2,160,000.

In contrast, the R.K. Barnes Appraisal reached an "as-is" value by assuming that the typical investor is looking to purchase property as a ten-year investment. Mr. Smedley testified that today's investors are no longer willing to hold onto property in this economy. Instead, the typical investor is looking to stabilize the property and sell as quickly as possible. Therefore, Mr. Smedley testified, a discount is necessary to determine at what

price the Murfreesboro Property could sell in a 12-month period. The application of this discount decides whether an equity cushion exists.

## II. ARGUMENTS

Reliant Bank asserts that relief should be granted pursuant to 11 U.S.C. § 362(d)(1). As cause, Reliant Bank asserts that its security interest is not adequately protected. In response, the debtor contends that there is an equity cushion in the Murfreesboro Property, and with the post-petition rent payments being made, Reliant Bank is adequately protected.

## III. DISCUSSION

Pursuant to 11 U.S.C. § 362(d)(1), the Bankruptcy Court "[o]n request of a party in interest and after notice and a hearing . . . shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." Cause is not defined in the Code, and therefore, "courts must determine whether discretionary relief is appropriate on a case-by-case basis." ***Laguna Assoc. Ltd. P'ship v. Aetna Cas. & Surety Co. (In re Laguna Assoc. Ltd. P'ship)***, 30 F.3d 734, 737 (6th Cir. 1994) (citation omitted). The party requesting relief from stay bears the initial burden of establishing that cause exists, while the debtor bears the ultimate burden on all other issues except for those relating to equity in property. 11 U.S.C. § 362(g).

The lack of adequate protection may be shown through evidence of diminution of property values, a continual increase in the amount of the secured debt through interest accruals or otherwise, the failure to pay taxes, the failure to maintain insurance on the property, the failure to maintain the property, or other factors that may jeopardize the creditor's present position. ***In re J & M Salupo Develop. Co., Inc.,*** 388 B.R. 809, 812 (Bankr. N.D. Ohio 2008) (citation omitted). It may be necessary to show a combination of these factors and/or to demonstrate that the circumstances as a whole are sufficient to endanger the creditor's interest in the property. ***Id.***

Based on the proof, the Court finds that Reliant Bank's interest in the collateral is not adequately protected. Mr. Smedley was a well-qualified expert. His testimony and report were based upon sufficient facts and data, and his methodology was sound. ***See*** Fed. R. Evid. 702 and 703, as made applicable to this proceeding by Fed. R. Bankr. P. 9017. The Court adopts Mr. Smedley's observations regarding the declining market conditions for commercial real estate, the increase in vacancy rates, and the decrease in average rents. Most importantly, the Court finds that Mr. Smedley appropriately accounted for today's investors who are looking for properties that can be stabilized and sold as quickly as possible. These market conditions clearly justify the resulting discount of $300,000. Hence, the Court finds that the "as-is" value of the Murfreesboro Property is less than the principal amount owed on Reliant Bank's loan and that no equity cushion exists.

In addition, the Murfreesboro Property is not generating sufficient monthly net operating income to even pay the interest on Reliant Bank's loan and a monthly escrow for property taxes. Two of the tenants are substantially in arrears on rent payments, and a significant number of spaces are unoccupied. The only new tenant activity has been the addition of The Jones Company, which was given three months rent free as part of the lease agreement. Mr. Hall testified regarding prospective tenants, but no lease agreements have been signed, and the debtor does not have sufficient resources to construct improvements to attract new tenants. Instead, the debtor has to rely on loans from Mr. Wenas, his mother, and Mr. Hall, as it has done for its legal fees and the property taxes on the Murfreesboro Property. There was testimony that certain insiders, who are creditors with a security interest in the North Carolina Property, are willing to allow the debtor to apply income from the North Carolina Property to the debt on the Murfreesboro Property. As the proof at the August 10, 2010, hearing showed, no steps have been taken nor has approval been sought for permission to make adequate protection payments to Reliant Bank. Moreover, while the debtor intends to sell its North Carolina Property to eliminate its financial problems, there is no prospective buyer on the horizon. Finally, according to the debtor's monthly operating reports, the estate's unpaid bills have increased from $11,620 in April 2010 to $28,638.65 in May 2010.

## IV.  CONCLUSION

Accordingly, the Court finds that Reliant Bank is entitled to relief from the automatic stay.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.